UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JELEC USA, INC., | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION H-06-2379 |
| | § | |
| SAFETY CONTROLS, INC. d/b/a | § | |
| SAFCON, and KEVIN POPE, | § | |
| | § | |
| *Defendants.* | § | |

MEMORANDUM OPINION & ORDER

This action arises from defendant Kevin Pope's ("Pope") alleged misappropriation of

confidential information from his former employer, plaintiff Jelec USA, Inc. ("Jelec"), for the benefit

of his current employer, defendant Safety Controls, Inc. d/b/a Safcon ("Safcon").  To that end, Jelec

is seeking damages from the defendants for misappropriation of trade secrets or confidential

information, violations of the Lanham Act and the Texas Theft Liability Act, breach of fiduciary

duty, business disparagement, civil conspiracy, and tortious interference with existing and

prospective contractual relationships.  *See* Dkt. 53.  As this case nears a trial on the merits, the

parties have filed their respective briefs on whether Texas or Louisiana law should apply to

plaintiff's causes of action.  The defendants contend that Louisiana law should apply when all of the

parties are Louisiana domiciliaries and a key piece of possibly confidential information, an ACT

database of customer contacts, has at all times been kept in Louisiana.  Jelec responds that Texas law

should apply because the defendants directed their competitive activities, which it claims were

unlawful, toward the Texas market.  After reviewing the arguments of counsel, the record, and the

applicable law, the court agrees with the plaintiff.  The court HOLDS that Texas law will govern

plaintiff's causes of action.  Additionally, defendants' motion for leave for expedited hearing on the joint pre-trial order (Dkt. 50) is GRANTED IN PART, and the court will hold a hearing to consider the parties' pending motions in limine (Dkts. 43, 44, 57) and the defendants' motion to compel depositions (Dkt. 58) on July 26, 2007 at 2 p.m.  Finally, Jelec is ORDERED to respond to defendants' motion to compel by the close of business on Tuesday, July 24, 2007.

## I.  FACTUAL & PROCEDURAL BACKGROUND

This action involves two competitors in the oilfield services industry, Jelec and Safecon, both of which have their principal offices in Lafayette, Louisiana.  Defendant Kevin Pope resides in Carenco, Louisiana, a small town eight miles north of Lafayette.  In January 2003, Jelec hired Pope as a sales representative.  Pope marketed Jelec's safety systems and products to oil companies in Texas and Louisiana, although Pope claims that the majority of his "work activities occurred in [Jelec's] Lafayette, Louisiana office."  Dkt. 6.  Also, before Pope began work at Jelec, he had created an ACT  database of oil and gas clients while employed by Sola Communications.  He took his database to his subsequent employer, Caprock, and then brought the database with him to Jelec.  The parties agree that during his employment with Jelec he continued to develop information in the database, including updating it with customer contact information.  After leaving Jelec on April 13, 2006, Pope brought the database to Safcon and has used the contact information to solicit work from customers he serviced at Jelec.

Further, when Pope arrived at Safcon on April 17, 2006, he joined two colleagues, David Garcia and Tony Bailey, who had recently left Jelec. One week later, Diamond Offshore awarded a job regarding the "Concord and Columbia projects," which Jelec had been seeking, to Safcon. Defendants admit that shortly before Diamond Offshore announced this award, Pope and Garcia

traveled to Houston, Texas, to "attempt to meet with Diamond Offshore representatives for the purpose of marketing . . . the Concord and Columbia projects." *See* Dkt. 55 at 7. Although the defendants vigorously deny that Pope and Garcia committed any tort on this trip, or even intended to do so, they freely admit that Pope made a contact with Texas that is relevant to the plaintiff's causes of action.

Lastly, in early 2006, while Pope was still employed at Jelec, another Texas company, Parker Drilling, requested bids from Jelec for a fire detection system and a fire suppression system for an oil rig in New Iberia, Louisiana. Although the reasons for his action are disputed, the parties agree that Pope referred a bid request for the fire suppression job to Safcon, which then prepared and submitted a bid for that job to Parker Drilling. Pope contends that this referral was made after being instructed to do so by an official in Jelec's Houston office, while plaintiff contends that Pope referred this job to benefit his future employer to Jelec's detriment.

Seeking a remedy for the defendants' allegedly unlawful conduct, Jelec sued Safcon and Pope in this court on July 18, 2006. The parties are set for trial on July 30, 2007, and the parties have briefed the court on the extant choice-of-law issue in this case, namely whether the plaintiff's claims are governed by Texas or Louisiana law. In order to determine which state's laws apply to plaintiff's causes of action, the court must undertake a full conflicts-of-law analysis.

## II. ANALYSIS

To determine the governing law when faced with a possible conflict of substantive state laws, the district court applies the choice-of-law rules of the forum state, which in this case is Texas. *See, e.g.*, *Jackson v. W. Telemarketing Corp. Outbound*, 245 F.3d 518, 521 (5th Cir. 2001) (citing *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S. Ct. 1020 (1941) ("[T]he proper function of the

. . . federal court is to determine what the [forum's] state law is, not what it ought to be.")).  Here,

although Texas once followed the *lex loci delicti* approach for tort cases,[1] the Texas supreme court

has abandoned this rule in favor of the less restrictive "most significant relationship" test from the

Second Restatement of Conflicts.  *See Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 421 (Tex.

1984); *Gutierrez v. Collins*, 583 S.W.2d 312, 318-19 (Tex. 1979); *Vanderbilt Mortgage & Fin., Inc.*

*v. Posey*, 146 S.W.3d 302, 313 (Tex. App.—Texarkana 2004, no pet.); *see also* RESTATEMENT

(SECOND) OF CONFLICT OF LAWS §§ 6, 145 (1971).  The Restatement test is divided into two steps,

which the court will address in turn.

     *1. Step One: Is There a True Conflict of Laws?*

     The first step in employing the "most significant relationship" approach is to decide whether

the laws of the various jurisdictions conflict.  "If the laws do not conflict, there is no need to resolve

the choice of law problem." *Posey*, 146 S.W.3d at 313; *see also St. Paul Surplus Lines Ins. Co. v.*

*Geo Pipe Co.*, 25 S.W.3d 900, 903 n.2 (Tex. App.—Houston [1st Dist.] 2000, pet. dism'd by agr.).

---

[1] The *lex loci delicti*, i.e. the law of the state in which the wrong occurred, was applied by Texas courts for nearly a century.  *See De Ham v. Mexican Nat'l Railway Co.*, 23 S.W. 381, 382 (Tex. 1893); *Tex. & Pacific Railway Co. v. Richards*, 4 S.W. 627, 628–29 (1887).  However, in 1979, after the promulgation of the Second Restatement of Conflicts, the Texas Supreme Court overruled *Richards* and similar cases and adopted the Restatement's functional and flexible approach.  *Gutierrez v. Collins*, 583 S.W.2d 312, 317 (Tex. 1979).  According to the court, *lex loci delicti* was a doctrine with a static focus that often missed the wider and more significant contacts of another state to the pending issue.  "*Lex loci delicti* had its origins in the days when travel across state lines [were] relatively rare and perhaps it served a useful purpose in that time.  In today's highly mobile society, however, its continued application most commonly produces harsh and inequitable results. It is in recognition of this fact that courts and commentators are seeking to fashion a new rule more attuned to the demands of modern society." *Id.*  This rule, fashioned by the American Law Institute in the Second Restatement, became known as the "most significant relationship" approach.  *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS §§ 6, 145 (1971); *see*, *e.g.*, Leigh Anne Miller, Note, *Choice-of-Law Approaches in Tort Actions*, 16 AM. J. TRIAL ADVOC. 859, 872 (Spring 1993) ("The Restatement (Second) of Conflict of Laws codified an existing trend in choice-of-law cases toward applying the state law with the most significant relationship to the litigation.").

"There are no conflicts if there are no differences between the laws of the respective states concerning the issues relevant to the case." *See Posey*, 146 S.W.3d at 313; *Hull & Co., Inc. v. Chandler*, 889 S.W.2d 513, 517 (Tex. App.—Houston [14th Dist.] 1994, writ denied) (noting that a party must ordinarily cite the conflicting law of another forum "before undertaking a choice-of-law analysis so that the court can determine whether a true conflict of laws exists").

In this case, plaintiff contends that there is no conflict between Texas and Louisiana laws applicable to plaintiff's claims, and thus the choice-of-law question is moot. Dkt. 53 at 1. By contrast, defendants argue that the laws of Louisiana, a civil-law jurisdiction, are quite distinct from those of Texas, a common-law state.[2] Dkt. 55 at 7. The court has carefully reviewed the law

---

[2] From its infancy, the State of Louisiana has held firm to a civilian tradition against numerous calls for it to adopt a common-law system of adjudication. *See Willis-Knighton Med. Ctr. v. Caddo Shreveport Sales & Use Tax Comm'n*, 903 So. 2d 1071, 1106 n.3 (La. 2005) (Weimer, J., assigning additional reasons) (chronicling the development and preservation of the civil law in Louisiana). In fact, although Congress, Governor William Claiborne, and President Thomas Jefferson intended to introduce common-law traditions to the Louisiana Purchase in the early 1800s, the people resisted the new system. A.N. Yiannopoulos, Essay, *Requiem for a Civil Code: A Commemorative Essay*, 78 TUL. L. REV. 379, 383–85 (2003). Prompted by Edward Livingston, a New York lawyer who immigrated to Louisiana and discovered the "superiority of the civil law system," Louisianians maintained the primacy of the civilian tradition through a manifesto which persuaded Governor Claiborne to accept the legislature's wish for a new civil law in the territory. *Id.* at 384–86. The manifesto states, in part: "We certainly do not attempt to draw any parallel between the civil law and the common law; but in short, the wisdom of the civil law is recognized by all Europe; and this law is the one which nineteen-twentieths of the population of Louisiana know and are accustomed to from childhood, of which law they would not see themselves deprived without falling into despair." *Id.* (As an aside, this manifesto is republished in full each year in the annual update to the Louisiana Civil Code. *Id.* at 384–85). At any rate, this public plea led the governor to approve the digest of laws that came to be known as the Louisiana Civil Code of 1808. *Id.* at 386. Since that codification, the Civil Code has been amended numerous times, most notably in 1870. And while the retention of civil law in Louisiana has been characterized by its supporters as the result of justifiable pride (and by its detractors as stubborn recalcitrance), there can be no doubt that there are definite differences between Louisiana law developed from the continental system and Texas law modeled after Anglo-American common law. With regard to the issues of this case, the scope of these differences must be delineated to determine whether a conflict-of-laws analysis is warranted for Jelec's causes of action sounding in tort.

applicable to plaintiff's causes of action from Texas and Louisiana and finds that there are material

differences of law.  For example, with regard to plaintiff's core claim of misappropriation, Louisiana

statutory law (which is superior to any judicial interpretation thereof)[3] *requires* reasonable efforts

to maintain the secrecy of information for such material to qualify as a trade secret.  *See* LA. REV.

STAT. ANN. § 51:1431(4)(b) (defining one element of a "trade secret" as information which "is the

subject of efforts that are reasonable under the circumstances to maintain secrecy"); *Tubos de Acero*

*de Mexico, S.A. v. Am. Int'l Inv. Corp.*, 292 F.3d 471, 483 (5th Cir. 2002) (citing *Reingold v.*

*Swiftships, Inc.*, 126 F.3d 645, 648 (5th Cir. 1997)).  Against this rigid backdrop, Texas courts view

efforts to maintain secrecy as merely a *factor* in determining whether the item can be considered a

protected trade secret.  *See T-N-T Motorsports, Inc. v. Hennessey Motorsports, Inc.*, 965 S.W.2d 18,

22 (Tex. App.—Houston [1st Dist.] 1998, pet. dism'd).  This difference is illustrative of the many

distinctions to be found between the laws of Louisiana and Texas on these issues, although the court

does concede that the states' laws on these issues are similar, which is unsurprising because they

are based on analogous policy concerns.  Nonetheless, due to the manifest differences that are

present, the court must now embark upon a full choice-of-laws analysis to determine which state's

law should govern this action.

    *2.  Step Two: The Relationship Factors*

    If the laws between the interested states differ, as they do in this case, the second step in

deciding choice of law is to determine which state, with respect to the issues, has the "most

significant relationship to the occurrence and the parties."  *See* RESTATEMENT (SECOND) ON

---

[3] *Willis-Knight Med. Ctr.*, 903 So. 2d at 1106 (Weimer, J., assigning additional reasons) ("Jurisprudence must supplement, not supplant the legislation.").

CONFLICT OF LAWS § 145 (1971). In tort cases, this phase of the choice-of-law analysis involves two

levels. The court addresses each of these levels below.

### a. The General Test

Section 6 of the Restatement of Conflicts sets forth the general principles which guide the

application of the more specific rules, and states in full:

> (1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.
>
> (2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include
>
>> (a) the needs of the interstate and international systems,
>>
>> (b) the relevant policies of the forum,
>>
>> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
>>
>> (d) the protection of justified expectations,
>>
>> (e) the basic policies underlying the particular field of law,
>>
>> (f) certainty, predicability, and uniformity of result, and
>>
>> (g) ease in the determination and application of the law to be applied.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6 (1971); *see also CPS Int'l Inc. v. Dresser*

*Indus., Inc.*, 911 S.W.2d 18, 29 n.11 (Tex. App.—El Paso 1995, writ denied).

In applying section 6 to this case, the court first identifies the relevant state contacts to be

considered. *See Duncan*, 665 S.W.2d at 421. After the contacts are established through a factual

inquiry, the choice-of-law question is, unsurprisingly, reserved to the court as a matter of law.

*Gutierrez*, 583 S.W.2d at 319. Furthermore, selection of the applicable law depends not on the

number of contacts with an interested jurisdiction, but rather on the qualitative nature of the

particular contacts. *Id.*

The following undisputed state contacts are present in this case: all of the parties are

domiciliaries of Louisiana; Pope's ACT database was created and stored in Louisiana; Pope solicited

the business of Diamond Offshore, a Texas company, in Houston, Texas; Safcon prepared a bid for

a fire suppression system to be installed in Louisiana for Parker Drilling, also a Texas company; and

both Safcon and Jelec compete for business in the oilfield services industry in Texas, Louisiana, and

elsewhere along the Gulf coast.

As to the first factor, the needs of the interstate and international systems, neither party has

presented any arguments over which law is favored by this factor, and thus the court finds that this

factor is neutral.  The second, third, and fifth factors mandate a comparison of each interested state's

policies and interests underlying the issues to be decided.  In this case, centered around an alleged

breach of fiduciary duty and interference with business relationships perpetrated through

misappropriation, both Texas and Louisiana law have similar goals in their trade secret protections.

Indeed, both states have established a body of law which proscribes certain unlawful business

conduct by employees against their employer but which also encourages competition and the free

mobility of labor.  *Compare T-N-T Motorsports*, 965 S.W.2d at 21–22 (discussing the tension

between trade secret law adopted to protect employers' business models dependent on continued

secrecy against the general right of ex-employees to use their specialized knowledge for their own

benefit), *with SDT Indus., Inc. v. Leeper*, 793 So. 2d 327, 333 (La. Ct. App. 2d Cir. 2001) ("In

determining what constitutes unfair competition, the court must balance the right of the employee

to individual freedom on the one hand and the right of the employer to honest and fair competition

8

and to protection of business assets and property in the nature of trade secrets on the other hand.").

Also, in comparing the interest of the forum, Texas, against that of Louisiana, the court finds that

Texas has a greater interest in this litigation.  The complained-of conduct by the defendants was

aimed at Texas and allegedly interfered with and harmed business relationships in this state.  While

the court is not blind to defendants' repeated appeals to Louisiana law due to the location of the

parties and the financial damages situated in Louisiana, the domicile of parties is not entitled to great

weight for tort claims, and the financial damages in Louisiana are a mere reflection of the possibly

devastating effects to Jelec's business relationships with Texas entities.  *See* RESTATEMENT

(SECOND) OF CONFLICT OF LAWS § 6 cmt. f (1971) ("In general, it is fitting that the state whose

interest are most deeply affected should have its local law applied."); *Bridas Corp. v. Unocal Corp.*,

16 S.W.3d 893, 898–99 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) (concluding that the

place of incorporation of the parties is accorded little weight "when the action is based upon a

business or financial interest or interference with contractual relations") (citing RESTATEMENT

(SECOND) OF CONFLICT OF LAWS § 145 (2) cmt. e)); *see also CPS Indus.*, 911 S.W.2d at 29

("Although appellants now argue they were harmed financially in Texas, that financial harm is a

mere measurement of and was produced by Appellants' inability to operate in [the foreign state]).

 Accordingly, these factors weigh in favor of Texas law.

Next, the fourth and sixth factors were intended to apply in fields like contract law,  in which

the parties' planning of certain conduct is expected and even encouraged, and thus these factors are

entitled to little weight in a case involving only tort causes of action.  RESTATEMENT (SECOND) OF

CONFLICT OF LAWS § 145(1) cmt. b (1971) ("[T]he protection of the justified expectations of the

parties, which is of extreme importance in such fields as contracts, property, wills and trusts, is of

lesser importance in the field of torts. . . .  Likewise, the values of certainty, predictability, and

uniformity of result are of lesser importance in torts than in areas where the parties and their lawyers

are likely to give thought to the problem of the applicable law in planning their transactions."); *see*

*also Posey*, 146 S.W.3d at 314.  Consequently, these factors do not materially aid this court's choice-

of-law analysis with regard to plaintiff's claims, and again neither weighs for or against the

application of either state's substantive laws.

Lastly, the seventh factor asks the court to consider the ease in the determination and

application of the law to be applied.  Defendants claim that this factor weighs in Louisiana's favor

because Louisiana has codified statutes and published opinions addressing plaintiff's causes of

action. *See* Dkt. 41 at 4.  Plaintiff responds that Texas law on its claims is well-established and has

also been developed through numerous published decisions.  Dkt. 53 at 14–15.  Given that Texas

and Louisiana law are equally easy to discern and apply, the competing interests for this factor are

in equipoise and render the seventh factor neutral.

In conclusion, as to the general test for the choice-of-law analysis, the court finds that the

factors weigh slightly in favor of the application of Texas law.  The court's work does not end here,

however, and the court will next consider the second, specific level of analysis found in sections 145

and 156 of the Second Restatement of Conflicts.  *Posey*, 146 S.W.3d at 314.

**b.  The Specific Test for Tort Claims**

While Section 6 "sets out the general principles by which the more specific rules are to be

applied," *Guiterrez*, 583 S.W.2d at 318–19, section 145 adds additional factors to be utilized in tort

cases.  *Posey*, 146 S.W.3d at 314–15.  Section 145 states in full:

(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

> (a) the place where the injury occurred,
>
> (b) the place where the conduct causing the injury occurred,
>
> (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
>
> (d) the place where the relationship, if any, between the parties is centered.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145 (1971), *quoted in CPS Int'l*, 911 S.W.2d at 29. But before the court embarks on its application of § 145 to the facts of this case, it is necessary to evaluate § 156 on account of its "guidance as to the relative importance of the four factors identified in Section 145." *CPS Int'l*, 911 S.W.2d at 29. Section 156 states in full:

(1) The law selected by application of the rule of § 145 determines whether the actor's conduct was tortious.

(2) *The applicable law will usually be the local law of the state where the injury occurred*.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 156 (1971) (emphasis added). Thus, with respect to tort causes of action, the Restatement emphasizes, but does not mandate,[4] the choice of state

---

[4] If the Restatement did mandate an application of the state's law with the greatest connection to the injury, this would be a silent return to the *lex loci delecti* approach, a test which the Texas supreme court explicitly abolished in 1979. *See Gutierrez*, 583 S.W.2d at 318 ("The common law doctrine of Lex loci delicti in this state is hereby overruled.").

substantive law with the greatest connection to the injury plaintiff seeks to remedy.  Given this emphasis, the court will first analyze the factor regarding the situs of the injury under § 145.

Although the parties disagree on the location of the injuries alleged by Jelec, the court finds that the situs of the injuries is Texas.  Indeed, the contracts which Jelec alleges the defendant interfered with and the information which was allegedly misappropriated were directed toward a Texas company, Diamond Offshore.  *Cf. Unocal*, 16 S.W.3d at 897 (holding that foreign law would apply when plaintiff alleged defendant interfered with relationships centered in the foreign state). The defendants also admit that Pope traveled to Houston to bid, on behalf of Safcon, for Diamond Offshore's business, and that Pope referred work for Texas-based Parker Drilling to Safcon, potentially violating his fiduciary duties to Jelec and affecting Jelec's standing in the Texas market. In sum, although the court recognizes that Jelec and Safcon are based in Louisiana,  the court nevertheless finds that Texas is properly characterized as the place of injuries for alleged torts which affect Jelec's business relationships with *Texas* customers.  Accordingly, the first factor weighs strongly in favor of the application of Texas law.

The second factor the court considers under section 145 is the "place where the conduct causing the injury occurred."  *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145(2)(b) (1971).  At first glance, it seems that this factor would favor Louisiana law, as much of the defendants' alleged conduct originated in Lafayette, Louisiana and the surrounding areas.  However, the court may not decide these issues on the basis of initial impressions; rather, the court is bound to faithfully apply Texas's choice-of-law rules on this subject.  In re *Korean Air Lines Disaster of Sept. 1, 1983*, 829 F.2d 1171, 1175 (D.C. Cir. 1987) ("[F]ederal courts . . . may not compose federal choice-of-law principles; instead, they must look to [the forum's] prescriptions in determining which

state's law applies.").   And on these issues, Texas law is clear.  In *CPS Int'l*, a case before the El

Paso Court of Appeals, the plaintiff alleged that defendant directed malicious misrepresentations

toward customers in the Saudi Arabian market and otherwise interfered with prospective

relationships with Saudi customers.  *See CPS Int'l*, 911 S.W.2d at 29–30.  Plaintiffs argued that the

location of the injury-producing conduct was Texas, but the court disagreed and found that Saudi

Arabian law applied to plaintiff's claims.  According to the court, the fact "that tortious conduct may

have been directed from Texas does not alter the reality that the conduct was directed to and carried

out in Saudi Arabia, and it was the carrying out of the conduct that was the source of its harmful

nature."  *Id.* at 30; *see also Unocal*, 16 S.W.3d at 898 (adopting the El Paso court's analysis on this

factor regarding the situs of conduct for analogous torts).  Similarly, in this case Pope and Safcon's

alleged conduct was directed toward Texas customers and affected Jelec's relationships in this state.

Thus, the situs of the conduct is Texas, and the second factor also weighs in favor of the application

of Texas law.

The third factor considered under section 145 is the parties' domicile, including the

respective places of incorporation and places of business for the corporate parties.  In this case, all

of the parties are domiciliaries of Louisiana and maintain their principal offices (or residence in

Pope's case) in or near Lafayette, Louisiana.  As a result, this factor weighs in favor of Louisiana

law.[5]

---

[5] The court notes that as to the considerations of the parties' "place of business," this factor
could also weigh in favor of Texas law because the business contacts at issue here were directed
toward and thus occurred in Texas.  However, given that the parties are all undisputed Louisiana
citizens, the court will construe this factor to weigh in favor of Louisiana law.

Lastly, the fourth factor requires consideration of "the place where the relationship, if any, between the parties is centered." *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145(2)(d) (1971). "When there is a relationship between the plaintiff and the defendant and when the injury was caused by an act done in the course of the relationship, the place where the relationship is centered is another contact to be considered." *Id*. cmt. e. Here, the parties maintained contractual and fiduciary relationships both before and after this suit was filed, and this case centers around the conduct of each party affecting a business relationship with another party, all of whom are citizens of Louisiana. Thus, the parties' relationships among themselves were centered in Louisiana, and this factor also weighs in favor of the application of Louisiana law.

### c. Conclusion

With regard to the four specific tort factors, two weigh in favor of Texas law and two factors favor the application of Louisiana law. However, after considering the general and specific choice-of-law tests in tandem, the court holds that the quality of the defendants' contacts alleged in plaintiff's claims bears the "most significant relationship" with Texas. Although the parties are citizens of, and have maintained relationships in, Louisiana, the alleged injuries and conduct relevant to this case occurred in Texas. In accordance with the principles delineated in sections 145 and 156 of the Second Restatement of Conflicts, the applicable laws of the state of Texas, not Louisiana, will apply to the plaintiff's causes of action.

## IV. CONCLUSION

For the foregoing reasons, the court HOLDS that Texas law applies to Jelec's claims. In accordance with this decision, the parties are directed to file an amended, combined jury charge pursuant to Rule 9(B)(2) of the court's procedures by the close of business on Wednesday, July 25,

2007.[6] Also, defendants' motion for leave for expedited hearing on the joint pre-trial order (Dkt. 50) is GRANTED IN PART, and the court will hold a hearing to consider the parties' pending motions in limine (Dkts. 43, 44, 57) and the defendants' motion to compel depositions (Dkt. 58) on Thursday, July 26, 2007, at 2 p.m.  Lastly, Jelec is ORDERED to respond to defendants' motion to compel by the close of business on Tuesday, July 24, 2007.

    Signed at Houston, Texas, on July 19, 2007.

                                        Gray H. Miller
                              United States District Judge

---

[6] The parties may access this court's procedures through the Southern District of Texas's Homepage, with a direct link at http://www.txs.uscourts.gov/district/judges/ghm/ghm.pdf.